United States District Court
Southern District of Texas
**ENTERED**

October 22, 2025

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| LIONEL FORD, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-25-916 |
| § | |
| PANGEA INTERNATIONAL TRADING § | |
| CO., *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

Lionel Ford alleges that his former employer, Pangea International Trading Company,[1] discriminated against him based on his race, subjected him to a hostile work environment, and unlawfully fired him. (Docket Entry No. 1-1). His sixteen causes of action include claims under Title VII of the Civil Rights Act of 1964 and § 1981 of the Civil Rights Act of 1866, Chapter 21 of the Texas Labor Code, and Texas common-law claims for assault, negligence, fraudulent misrepresentation, and intentional infliction of emotional distress. (*Id.*). Pangea moved to dismiss some of the claims, and Ford responded. (Docket Entry Nos. 3, 5, 22, 23).

Based on the pleadings, the briefing, and the applicable law, the court grants the motion for partial dismissal. The following claims are dismissed, with prejudice, because amendment would be futile: the Title VII and Chapter 21 claims alleging national-origin discrimination; the fraud claim; the intentional infliction of emotional distress claim; the negligent hiring, supervision,

---

[1] There is some discrepancy concerning the proper defendant. (Docket Entry No. 3 at 7 n.1) (identifying the proper defendant as Pangea International Trading Co., not Pangea Distribution). For this memorandum and opinion, "Pangea" will suffice.

and retention claims; the general negligence claim; and the assault claim.  The remaining claims may proceed.

## I.     Background

Lionel Ford, who is African American, worked as a Forklift Operator at Pangea from February 2023 to October 2023.  (Docket Entry No. 1-1 at 4, 5, 9) (¶¶ 9, 14, 41).[2]  Ford alleges that shortly after starting work at Pangea, "he was arbitrarily assigned additional responsibilities" that fell "outside his original job description."  (*Id.* at 4) (¶ 9).  He alleges that three months into his employment, his supervisors tried to block his request for a raise "and prevent him from speaking with the manager." (*Id.*) (¶ 10).  He ultimately received the raise, although he does not specify when precisely the raise happened.

Ford also alleges that he "experienced a hostile work environment, characterized by racial discrimination and unequal treatment towards African American employees." (*Id.*) (¶ 11).  He alleges that "a Caucasian mechanic . . . refused to service trucks used by African American drivers and used racial slurs, stating he would 'work them n[******].'" (*Id.*).  Ford alleges that "Conrad, the manager responsible for hiring and firing decisions," tolerated and indirectly encouraged the mechanic's behavior.  (*Id.*).  Conrad allegedly warned another employee not to confront the mechanic because he "has a lot of guns."  (*Id.* at 4–5) (¶ 11).  Ford perceived that comment "as an implicit threat meant to dissuade challenges to the discriminatory behavior."  (*Id.* at 5) (¶ 11).

Ford alleges that at Pangea, there was "disparate treatment in task assignments and oversight, favoring non-African-American employees."  (*Id.*).  As an example, Ford alleges that he "and another African American employee were subjected to unjustified drug tests without any

---

[2]  The court cites page numbers with the paragraph numbers because some of the paragraph numbers are repeated.

incidents or violations prompting such actions." (*Id.*) (¶ 12). He alleges that the "blatantly hostile environment led to frequent resignations of other African-American employees." (*Id.*) (¶ 13).

According to Ford, Pangea lacked a formal human resources department. (*Id.*). Ford alleges that this left him and other employees "without adequate channels to report grievances or seek recourse." (*Id.*). Nonetheless, Ford alleges that he "adequately lodged" a "complaint" at some point during his employment. (*Id.*) (¶ 14). He provides no details about this complaint. He then alleges that his employment was "abruptly terminated" on October 30, 2023, "in direct retaliation" for his complaint. (*Id.*). Ford also alleges that Conrad "physically assaulted" him during the termination meeting "and then instructed him to leave the premises." (*Id.*). Ford made a complaint to law enforcement officers and told them that he wanted to pursue charges, but the report of his complaint inaccurately stated that he did not want to do so. (*Id.*).

Ford filed a complaint with the Equal Employment Opportunity Commission. (*Id.*) (¶ 15). His complaint form listed discrimination based on "Color, Race, Retaliation." (Docket Entry No. 3-1 at 2). Ford claims that during the EEOC process, he "became aware that after his termination, leadership in an effort to coverup what they had done, proceeded to put false disciplinary documents fabricating a negative history and placed such falsified documents in his personnel file, further defaming his character and painting him as a problematic employee." (Docket Entry No. 1-1 at 4) (¶ 15).

Ford sued Pangea in state court, asserting sixteen causes of action related to wrongful termination, discrimination, and retaliation.[3] (Docket Entry No. 1-1). Pangea removed to this

---

[3] The sixteen causes of action are: (1) hostile work environment in violation of Title VII of the Civil Rights Act of 1964, (2) hostile work environment in violation of Chapter 21 of the Texas Labor Code, (3) retaliation for engaging in protected activities like documenting workplace misconduct and refusing unjustified drug testing, (4) assault, (5) violation of § 1981 of the Civil Rights Act of 1866, (6) negligence, (7) wrongful termination in violation of Title VII, (8) wrongful termination in violation of Chapter 21 of

court.  (Docket Entry No. 1).  Pangea has moved to dismiss the national-origin discrimination claims under Title VII and Chapter 21; the negligence claim; the negligent hiring, supervision, and retention claim; the fraudulent misrepresentation claim; the intentional infliction of emotional distress claim; and the assault claim.  (Docket Entry Nos. 3, 22).

## II.    The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'"  *Cicalese v. Univ. Tex. Med. Branch*,

---

the Texas Labor Code, (9) another claim for retaliation, (10) racial discrimination in violation of Chapter 21 of the Texas Labor Code and Title VII, (11) disparate treatment in violation of Chapter 21 of the Texas Labor Code and Title VII, (12) disparate impact in violation of Chapter 21 of the Texas Labor Code and Title VII, (13) discrimination based on national origin in violation of Chapter 21 of the Texas Labor Code and Title VII, (14) intentional infliction of emotional distress, (15) negligent hiring, supervision, and retention, and (16) fraudulent misrepresentation to the EEOC and in Ford's employment file.  (Docket Entry No. 1-1 at 6–21).

4

924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558). A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

This court freely grants leave to amend pleadings when justice so requires. *See* FED. R. CIV. P. 15(a)(2). One reason to deny leave is that the proposed amendment would be futile. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003). Amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

## III.    Analysis

### A.    Title VII and State Law Claims for National Origin Discrimination

Pangea moves to dismiss Ford's national-origin discrimination claims, but not his race-discrimination claims. (Docket Entry No. 3 at 9–11). Pangea argues that because Ford's EEOC charge listed discrimination based only on race, he failed to exhaust his administrative remedies for his national-origin discrimination claims. (*Id.* at 9–11). Pangea argues that this dismissal must be with prejudice because the 300-day window to file an EEOC charge has expired. (*Id.*). In response, Ford argues that his failure to expressly mention national-origin discrimination in his EEOC charge is not fatal because his EEOC complaint allegations were sufficient to put Pangea

on notice that he was asserting a national-origin discrimination claim. (Docket Entry No. 19 at 4–6) (¶¶ 11–15).

To determine whether a claim has been exhausted, courts "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). Exhaustion is determined "not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). This rule "protects unlettered lay persons making complaints without legal training or the assistance of counsel." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).

Ford's EEOC charge states that he was retaliated and discriminated against "because of [his] Color, Race (Black), in violation of Title VII." (Docket Entry No. 3-1 at 3). The narrative portion of the charge clearly alleges racial discrimination and harassment, including racial slurs, and retaliation for a "complaint of opposing an unlawful employment practice." (*Id.*). But even reading the charge "somewhat broadly," this court cannot conclude that Ford's allegations could "reasonably be expected to trigger" an investigation into national-origin discrimination. *See Pacheco*, 448 F.3d at 792. Ford's EEOC complaint did not mention his national origin. His complaint did not describe facts that would put Pangea on notice that he was asserting this claim. While courts sometimes consider claims for national-origin discrimination as including claims for racial discrimination (and vice versa) "when the national origin and race may be correlated," *see Hernandez v. City of Corpus Christi*, 820 F. Supp. 2d 781, 795–96 (S.D. Tex. 2011), this is not such a case. *See Horne v. Tex. Dep't of Transp.*, No. 4:19-cv-405, 2020 WL 3498009, at *4 (E.D. Tex. June 29, 2020) (stating that "the relationship between race and national origin discrimination

6

claims is dependent on the facts of the case" and concluding that the plaintiff had not sufficiently related his national origin and racial discrimination claims). Because the EEOC charge did not assert a claim of national-origin discrimination, allege facts that could give rise to a national-origin discrimination investigation, or name Ford's national origin, he has not exhausted his national-origin discrimination claims.[4]

Ford's claims for national-origin discrimination must be dismissed with prejudice because they are now time-barred. These claims are based on allegations of unlawful employment practices that occurred between August 2023 and October 2023. (Docket Entry Nos. 1-1, 3-1). His employment with Pangea ended on October 30, 2023. (Docket Entry No. 1-1 at 5) (¶ 14). In Texas, "a Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory act." *Doe v. Univ. of Tex. M.D. Anderson Cancer Center*, 653 F. Supp. 3d 359, 371 (S.D. Tex. 2023). There is an even shorter period for exhausting administrative remedies for Chapter 21 claims: 180 days rather than 300. *Id.* (citing TEX. LAB. CODE § 21.202(a)). Ford's failure to timely exhaust his administrative remedies is fatal to both his federal and state law claims. *See Richards v. Exxon Mobil Corp.*, No. 4:24-cv-2422, 2025 WL 1839450, at *3 (S.D. Tex. June 9, 2025), *report and recommendation adopted*, 2025 WL 1837742 (S.D. Tex. July 3, 2025) (dismissing the plaintiff's Title VII claims with prejudice because more than 300 days had passed since his allegedly unlawful termination); *Daniel v. Logoplaste*, No. 3:25-cv-250, 2025 WL 2632402, at *5 (N.D. Tex. July 30, 2025), *report and recommendation adopted*, 2025 WL 2394084

---

[4] The exhaustion requirement applies to both the Title VII and Chapter 21 claims. *See Jones v. Driver Pipeline*, No. 3:25-cv-0121, 2025 WL 1908301, at *3 (N.D. Tex. July 10, 2025) (explaining the exhaustion requirements of Texas state law and dismissing the Title VII and Chapter 21 claims for failure to exhaust).

(N.D. Tex. Aug. 18, 2025) (dismissing the plaintiff's Chapter 21 claims with prejudice because he had failed to file a charge within 180 days of his allegedly unlawful termination).

Ford's Title VII and Chapter 21 national-origin discrimination claims fall outside the scope of his EEOC charge. Because those claims are now time-barred, they are dismissed, with prejudice because amendment would be futile.

### B.    The Fraud Claim

Ford asserts a fraud claim based on allegations that Pangea made misrepresentations to the EEOC "regarding [Ford's] performance, job duties, and the reasons for his termination," and the reason for "any disciplinary measures taken against him." (Docket Entry No. 1-1 at 20, 21) (¶¶ 107, 108). Ford alleges that Pangea made these misrepresentations to hide its discriminatory and retaliatory conduct. (*Id.*). Ford also alleges that Pangea "fabricated documents in [Ford's] file, which contained false statements about his conduct and performance, in an attempt to create a false narrative[,] . . . avoid accountability," and sabotage Ford's future employment opportunities. (*Id.* at 21) (¶¶ 108, 109). In response, Pangea argues that Ford's fraud claim is not pleaded with the particularity required by Rule 9(b). (Docket Entry No. 3 at 12–14).

The court agrees that Ford's allegations do not satisfy Rule 9(b)'s heightened pleading requirements for fraud claims. "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc., v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). Ford's complaint does not allege who at Pangea made the misrepresentations to the EEOC or put false information in Ford's employment file.[5] Nor does Ford allege when the misrepresentations were

---

[5] The complaint attributes the allegedly false personnel documents to "leadership," without any further detail. (Docket Entry No. 1-1 at 5) (¶ 15).

made, other than to say that the false personnel files were created "after his termination." (Docket Entry No. 1-1 at 5) (¶ 15). It remains unclear what representations Ford asserts are false. Notably, Ford filed thorough briefing on the motion to dismiss and had the opportunity to file amended pleadings following a hearing. (Docket Entry Nos. 5, 18, 19, 20, 23). He has continued to fail to meet Rule 9(b)'s pleading standard. This claim is dismissed, with prejudice because the deficiencies in the complaint have long been identified, and Ford did not request leave to amend. *See Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (stating that a court may dismiss a claim with prejudice where "the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so").

### C.    The Intentional Infliction of Emotional Distress Claim

"To prevail on a claim for intentional infliction of emotion distress, Texas law requires the plaintiff to prove the following: (1) that the defendant acted intentionally or recklessly, (2) that the defendant's conduct was extreme and outrageous, (3) that the actions of the defendant caused the plaintiff emotional distress, and (4) that the emotional distress suffered was severe." *Johnson v. Merrell Dow Pharms., Inc.*, 965 F.2d 31, 33 (5th Cir. 1992) (per curiam). Ford alleges that he was subject to "extreme and outrageous conduct" by Pangea because he was (1) unjustifiably subjected to drug testing, (2) was assigned additional responsibilities without equitable compensation, (3) was denied opportunities for advancement, and (4) was subject to a racially hostile work environment. (Docket Entry No. 1-1 at 18) (¶ 96).

This claim must be dismissed because it is subsumed in the employment discrimination claims. "[T]he intentional infliction of emotional distress was, first and foremost, a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim

has no other recognized theory of redress." *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (discussing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). "[I]f the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction [of emotional distress] claim regardless of whether he or she succeeds on, or even makes, a statutory claim." *Powells v. 1600 West Loop South, LLC*, Civ. Action No. H-23-3790, 2024 WL 1769350, at *4 (S.D. Tex. Apr. 23, 2024) (alterations in original) (quoting *Johnson v. Blue Cross/Blue Shield of Tex.*, 375 F. Supp. 2d 545, 549 (N.D. Tex. 2005)). Because Ford's claims are plainly the "type covered by a statute," his claim "does not require a 'gap filler.'" *Id.*

The intentional infliction of emotional distress claim is dismissed, with prejudice because amendment would be futile.

### D.    The Negligence and the Negligent Hiring, Retention, and Supervision Claims

Ford asserts two separate claims based on negligence: a general negligence claim for failing to provide a safe and non-hostile working environment, (Docket Entry No. 1-1 at 9–10) (¶¶ 46, 47), and a negligent hiring, supervision, and retention claim based on Pangea's alleged failure to properly supervise the employees who failed to address his "complaints of discrimination, subjected him to unjustified drug testing, denied him fair opportunities for advancement, and exposed him to a hostile work environment." (*Id.* at 19–20) (¶¶ 102, 103). In its motion to dismiss, Pangea argues that Ford's complaint "does not put forth any facts showing that Pangea knew or should have known that a supervisor or other employee was unfit for the position." (Docket Entry No. 3 at 12).

"The elements of a negligence action are duty, a breach of that duty, and damages proximately caused by the breach." *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640,

648 (S.D. Tex. 2016). "Negligent hiring, retention, and supervision claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability." *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet.). "[A]n employer is liable for negligent hiring, retention, or supervision if it hires an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." *Id.* "Negligence in hiring or retention requires that the employer's failure to investigate, screen, or supervise its employees proximately cause the injuries the plaintiff alleges." *Id.*

Ford has not alleged facts that could support his negligent supervision, retention, and hiring claims. The fact section of the complaint refers to a "manager responsible for hiring and firing decisions" who allegedly did not take actions against a Caucasian mechanic who used racial slurs and discriminated against African American drivers. (Docket Entry No. 1-1 at 4) (¶ 11). The complaint also alleges that Pangea "lacked a formal human resources department, leaving employees like Mr. Ford without adequate channels to report grievances or seek recourse." (*Id.* at 5) (¶ 13). But it is not clear whether these factual allegations are, or could be, the basis for the negligent hiring, supervision, and retention claims. Ford's response to the motion to dismiss simply asserts that he has sufficiently pleaded these claims, without citing to the complaint. (Docket Entry No. 5 at 7) (¶ 23).[6] Ford has failed to meet the pleading requirements for these claims.

---

[6] Although Ford's response also asserts that Pangea "failed to provide appropriate training to its employees on how to handle discrimination and retaliation issues, further allowing the misconduct to continue unchecked," the complaint does not mention a failure to train outside of a request in the relief section that the court order mandatory training for Pangea supervisory and human resources employees. (*See* Docket Entry No. 5 at 8 (¶ 27); Docket Entry No. 1-1 at 23) (¶ 125).

In addition to the pleading deficiencies, the negligent hiring, supervision, and retention claim and the general negligence claim must be dismissed for the independent reason that they are duplicative of the statutory discrimination claims. *See Light v. Pepperidge Farm*, No. 4:23-cv-01177, 2024 WL 1703714 (N.D. Tex. Apr. 19, 2024) (dismissing a negligent hiring, supervision, and retention claim and a negligence claim because they were preempted by Title VII). Ford's general negligence claim is based on the same actions as his statutory racial discrimination claims. (*See* Docket Entry No. 1-1 at 13) (¶ 70) (supporting his claims for racial discrimination under Title VII and Chapter 21 by referring to the same allegations of unjustified drug testing, arbitrary assignment of additional responsibilities, and hostile work environment that support his negligence claim). Because Ford "points to no separate set of facts on which he may stake a negligence claim," the negligence claim must be dismissed, with prejudice. *Id*; *see also Moody v. Chevron Phillips Chem. Co.*, Civ. Action No. H-17-1490, 2017 WL 2832737, at *5 (S.D. Tex. June 30, 2017). His negligent supervision, hiring, and retention claims are also preempted by his Title VII and Chapter 21 claims. *See Light*, 2024 WL 1703714, at *2; *see also Jones v. Driver Pipeline*, No. 3:25-cv-0121, 2025 WL 1908301, at *4 (N.D. Tex. July 10, 2025).

Ford's claims for negligence and negligent hiring, supervision, and retention are dismissed, with prejudice because amendment would be futile.

### E.   The Assault Claim

Finally, Ford alleges that Pangea, "through its manager Conrad, committed assault against [him] by intentionally pushing him" during his termination meeting. (Docket Entry No. 1-1 at 8) (¶ 37). In its supplemental briefing, Pangea asserts that Ford has failed to plead facts that could support vicarious liability for Conrad's alleged actions. (Docket Entry No. 22). In response, Ford argues that Pangea is vicariously liable for Conrad's alleged assault because "this act occurred

during the discharge of official duties and as part of a managerial directive to discipline an employee." [7]  (Docket Entry No. 23 at 5) (¶ 12).

An employer may be vicariously liable for the acts of an employee "if the employee's actions are within the course and scope of his employment." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007).  "Generally, committing an assault is not within the course and scope of an employee's authority." *Knight v. City Sts., L.L.C.*, 167 S.W.3d 580, 583 (Tex. App.–Houston [14th Dist.] 2005, no pet.) (citing *Tex. & Pac. Ry. Co. v. Hagenloh*, 247 S.W.2d 236, 239 (Tex. 1952)).  To be vicariously liable for an employee's assault, an employer must "place[] [the] employee in a position that involves the use of force, so that the act of using force is in the furtherance of the employer's business." *Id.* (citing *Hagenloh*, 247 S.W.2d at 239).

Ford argues that Pangea may be liable because Conrad's alleged assault was "within what [Conrad] perceived to be the scope of his supervisory authority."  (Docket Entry No. 23 at 4) (¶ 10).  That speculative statement fails to allege that Pangea authorized Conrad, as a supervisor,

---

[7] Ford also argues that Pangea is liable under a theory of ratification.  (Docket Entry No. 23 at 5–6) (¶¶ 13–14).  The court need not discuss that theory because it was raised for the first time in a pleading filed in response to a motion to dismiss. *See Dixon v. Ally Bank*, 853 F. App'x 977, 978 (5th Cir. 2021) (per curiam) (suggesting that a district court does not have to address arguments not raised in a "complaint and instead raised . . . for the first time in a pleading filed in response to [a] motion[] to dismiss").  Regardless, the court also concludes that this theory similarly fails because "[w]here the employee's tort 'consists of an assault and battery,' there are 'but a few situations' in which the employer 'may be constituted a wrongdoer by ratification.'"  *Campbell v. Racetrac Petroleum, Inc.*, No. 3:21-cv-0516, 2021 WL 4552253, at *6 (N.D. Tex. Oct. 21, 2021) (quoting *Sheffield v. Centr. Freight Lines, Inc.*, 435 S.W.2d 954, 956 (Tex. App.–Dallas 1968, no writ)).  Generally, to hold an employer liable for an employee's assault requires that the assault have been done in the business's interests.  *See Sheffield*, 435 S.W.2d at 956; *see also Rogers v. Lowe's Home Centers, Inc.*, No. 4:22-cv-532, 2023 WL 2815154, at *3 (E.D. Tex. Apr. 6, 2023) (explaining that "[t]o establish liability of an employer for the intentional tort of its employee under a theory of ratification, a plaintiff must demonstrate that the intentional tort was done in the employer's interest or was intended to further some purpose of the employer's" (quoting *Donahue v. Melrose Hotel*, No. 3:95-cv-2630, 1997 WL 148012, at *11 (N.D. Tex. March 26, 1997))).  Ford has cited no case law in support of his claim that Pangea's "awareness and indifference to the assault" constitutes ratification, (Docket Entry No. 23 at 5) (¶ 13), and the facts alleged in the complaint support an inference that that Conrad allegedly assaulted Ford out of personal animosity rather than to further Pangea's interests.

to use force in terminating an employee. Ford also argues that by using physical force during the termination meeting, Conrad was "furthering the Company's agenda." (*Id.*) (¶ 9). But this conclusory statement collapses the distinction between the act (an alleged assault), and the surrounding circumstances (terminating an employee). Rather than plausibly supporting an inference that Conrad's alleged assault was committed to further Pangea's business, Ford's allegations support the inference that Conrad assaulted Ford out of personal animosity. *See Hagenloh*, 247 S.W.2d at 239 ("Usually assault is the expression of personal animosity and is not for the purpose of carrying out the [employer's] business."); *see also Campbell v. Racetrac Petroleum, Inc.*, No. 3:21-cv-0516, 2021 WL 4552253, at *6–*8 (N.D. Tex. Oct. 21, 2021) (dismissing an assault claim with prejudice where the plaintiff's account of the altercation supported only a plausible inference that the dispute was based on personal animosity).

Ford has failed to adequately plead an assault claim against Pangea. This claim is dismissed, with prejudice because amendment would be futile.

## IV.    Conclusion

The motion to dismiss some of the claims, (Docket Entry No. 3), is granted. The Title VII and Chapter 21 claims alleging national-origin discrimination; the fraud claim; the intentional infliction of emotion distress claim; the negligent hiring, supervision, and retention claims; the general negligence claim; and the assault claim are dismissed, with prejudice because amendment would be futile. The case will proceed on Ford's remaining claims.

SIGNED on October 21, 2025, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge

14